IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS D. STRICKLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:04cv1045-T |
| | ) | (WO) |
| CITY OF DOTHAN, ALABAMA | ) | |
| and SYLVIA SUMMERS, | ) | |
| Officer, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Plaintiff Thomas D. Strickland filed this lawsuit
against defendants City of Dothan, Alabama and Officer
Sylvia Summers, claiming violations of his rights under
the United States Constitution and Alabama state law
resulting from his arrest and detention for driving under
the influence of alcohol.  Strickland asserts federal
claims against the city and Officer Summers based on the
due process clauses of the Fifth and Fourteenth
Amendments and the prohibition against unreasonable

searches and seizures of the Fourth Amendment, as enforced through 42 U.S.C.A. § 1983.  Strickland also asserts state-law claims against Summers for false arrest, false imprisonment, and malicious prosecution.

Jurisdiction over the federal claims is proper pursuant to 28 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights).  Supplemental jurisdiction over the remaining state-law claims is proper under 28 U.S.C.A. § 1367.

This case is before the court on defendants' motion for summary judgment.  For the reasons that follow, the motion will be granted in part and denied in part.

## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see</u> <u>also</u> <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor

3

of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II. BACKGROUND

The following facts are presented in the light most favorable to Strickland, the non-moving party.  On April 26, 2003, at approximately 1:34 a.m., Officer Summers stopped a vehicle, which was without headlights and driven by Strickland in downtown Dothan.[1]  Strickland had been acting as the designated driver for a group of friends over the course of the evening, one of whom was a passenger in the car at the time of the traffic stop. This passenger was intoxicated, and may have had a cup of beer in the car.[2]  Summers called for backup assistance

---

1.  Plaintiff's response to defendants' motion for summary judgment (Doc. No. 19), Exhibit A, Alabama Uniform Traffic Ticket and Complaint ("Traffic Ticket"); defendants' motion for summary judgment (Doc. No. 14), Exhibit A, deposition of Thomas D. Strickland ("Strickland deposition"), p. 18.

2.  Strickland deposition, p. 21.

from Officer Philip Rice, who arrived on the scene shortly thereafter.

Under questioning by Summers, Strickland stated that he had consumed a single alcoholic beverage approximately four hours earlier; Strickland acknowledges that there could have been an odor of alcohol in the car.[3]  Summers advised Strickland that she could smell alcohol[4], and then administered three field sobriety tests: the Horizontal Gaze Nystagmus ("HGN") test, a 'one-leg stand' test, and a 'walk-and-turn' test.  The HGN test is designed to determine whether a subject is able to follow a moving object without moving his head, and to determine the presence of nystagmus, an involuntary jerking of the eye caused by an inability to maintain a visual fixation as the eyes are turned to the side that in some circumstances can indicate impairment due to alcohol.[5]

_____

3.  Id.

4.  Id., p. 22..

5.  Plaintiff's response to defendants' motion for summary judgment (Doc. No. 19), Exhibit K, Report of

5

While administering the HGN test, Summers also administered an abbreviated Vertical Gaze Nystagmus test ("VGN").[6]  The VGN, like the HGN, checks for eye jerking as a stimulus is moved before the test subject, with the difference that, as the name suggests, the stimulus is moved vertically rather than horizontally.  Whereas the HGN tests for impairment caused by alcohol, the VGN can indicate the presence of some types of drugs.[7]

There is a factual dispute as to whether these tests were administered properly.  It is undisputed that Strickland put his foot down several times during the 'one-leg stand' test.  Summers also alleges that, during

_____

William T. Gaut ("Expert Report"), p. 10; Standardized Field Sobriety Testing (Appendix A), Development of a Standardized Field Sobriety Test, National Highway Traffic Safety Administration, U.S. Department of Transportation, available online at http://www.nhtsa.dot.gov/people/injury/alcohol/SFST/app endix_a.htm.

6. Defendants' motion for summary judgment (Doc. No. 14) Exhibit D, deposition of Sylvia Summers ("Summers deposition"), p. 39.

7. Id., Exhibit G, deposition of Phillip Rice ("Rice deposition"), p. 33.

'walk-and-turn' test, Strickland failed to start counting as instructed, did not touch the toe of his rear foot to the heel of his forward foot while walking, and did not 'pivot' correctly during the turn.[8]   After administering these tests, Summers felt that Strickland was 'borderline' impaired and asked Rice to conduct further field sobriety tests.[9]

Rice then administered a 'finger-to-nose' test, which Strickland passed.[10]   Strickland also passed a 'finger-touch' test.[11]   When asked to recite the alphabet, Strickland first recited quickly and missed the letter 'D.'  He correctly recited the alphabet when given an opportunity to do so more slowly.[12]   Finally, Rice administered a second HGN test and saw "some" or "a

_____

8.   Summers deposition pp. 33-35.

9.   Summers deposition, p. 40; Rice deposition, p. 33.

10.  Rice deposition, p. 33.

11.  Id., p. 34.

12.  Id.

7

little bit" of nystagmus, or eye jerking.[13]  Strickland contends that this test was not administered under appropriate conditions.  At the same time, Rice conducted all or part of a VGN test, observing no indication that Strickland was under the influence of drugs.[14]

Summers then arrested Strickland for driving under the influence of alcohol ("DUI"), 1975 Alabama Code § 32-5A-191(a)(2), and issued citations for DUI as well as for driving without headlights, 1975 Alabama Code § 32-1-4, and for an 'open container' violation, 1975 Alabama Code § 32-5A-330.[15]

Summers transported Strickland to the Dothan City Jail, where she administered a Draeger Intoxilizer Test (or Draeger Alcosensor MK III breath-alcohol test).  The test reported a blood alcohol level of 0.00 %, indicating

---

13. <u>Id</u>.

14. <u>Id</u>., pp. 33-34.

15. Strickland deposition, p. 43.

8

that Strickland had no alcohol in his body.[16]   On the citation for the DUI, Summers marked a box indicating that Strickland was "driving under the influence of any substance which impairs the mental or physical faculties."[17]   On the DUI arrest report, Summers marked that the offense was 'alcohol related.'[18]   On the same report, she checked a box marked IH4,[19] indicating that she believed Strickland to be intoxicated on alcohol or some other substance that would impair his ability to drive or walk safely down the street.   IH4 stands for 'In-house four,' indicating a minimum four-hour stay in jail.[20]

---

16. Plaintiff's response to defendants' motion for summary judgment (Doc. No. 19), Exhibit B, Draeger Alcosensor MK III results.

17. Traffic Ticket.

18. Plaintiff's response to defendants' motion for summary judgment (Doc. No. 19), Exhibit M, Dothan Police Department Arrest Report ("Arrest Report"), p. 4.

19. Id., p. 2.

20. Rice deposition, pp. 42, 43.

Approximately seven hours after taking the breath-alcohol test, Strickland was able to post bond and leave the jail.[21]  On June 3, 2004, Strickland was found not guilty of DUI.[22]

### III. FEDERAL CLAIMS

Strickland alleges that his arrest and subsequent detention constituted an unreasonable seizure under the Fourth Amendment, as well as a violation of his due-process rights under the Fifth and Fourteenth Amendments. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  The Fifth

---

21. Strickland deposition, p. 38.

22. Id., p. 40-42.

Amendment's due-process clause applies only to the federal government.  <u>Bartkus v. State of Illinois</u>, 359 U.S. 121, 124 (1959).  Because Strickland has alleged no federal participation, summary judgment will be granted to the extent Strickland relies on the Fifth Amendment.

Relief available under the Fifth Amendment is also available under the due process clause of the Fourteenth Amendment.  However, both Strickland's arrest and subsequent detention are more accurately analyzed under the Fourth Amendment's prohibition against unreasonable seizures.  "Whenever an officer restrains the freedom of a person to walk away, he has seized that person."  <u>Tennessee v. Garner</u>, 471 U.S. 1, 7 (1985).  An arrest is the quintessential example of a seizure.  <u>California v. Hodari D.</u>, 499 U.S. 621, 624 (1991).  Current law does not precisely define the extent to which a 'seizure' cognizable under the Fourth Amendment extends beyond an arrest.  <u>Contrast</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 278-279 (1994) (plurality opinion) (Ginsburg, J., concurring)

11

(finding that a defendant remains 'seized' in a constitutionally relevant sense even after released from custody so long as he is bound to appear in court and answer the state's charges); to <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1236 (11th Cir. 2004) (finding that normal conditions of pretrial release do not constitute a 'continuing seizure' barring a significant, ongoing deprivation of liberty, such as a restriction on a defendant's right to interstate travel).

However, it is clear that the Fourth Amendment's prohibition of unreasonable seizures extends for some time beyond the moment of arrest and, for Strickland's purposes, encompasses the approximately seven hours he was detained after his arrest and prior to posting bail. <u>See</u> <u>United States v. Myers</u>, 972 F.2d 1566, 1571-72 (11th Cir. 1992) (upholding a Fourth Amendment jury instruction in a post-arrest, pre-charge excessive-force case), <u>cert. denied</u>, 507 U.S. 1017 (1993); <u>Robins v. Harum</u>, 773 F.2d 1004, 1010 (9th Cir. 1985) ("once a seizure has occurred,

it continues throughout the time the arrestee is in the custody of the arresting officers"); <u>Sweatt v. Bailey</u>, 876 F.Supp. 1571, 1581 (M.D. Ala. 1995) (Thompson, J.) (discussing trend in case law finding that Fourth Amendment seizure continues past arrest at least until pretrial begins).

Consequently, Strickland's claims should be understood as arising from two discrete occurrences--his arrest and his subsequent detention--both of which involve a 'seizure' and should be analyzed under the 'objective reasonableness' standard of the Fourth Amendment. <u>Tinney v. Shores</u>, 77 F.3d 378, 381 (11th Cir. 1996). Accordingly, the court grants summary judgment to the extent Strickland relies on the Fourteenth Amendment, and the court proceeds with Fourth Amendment analysis.

### A. Claims against Officer Sylvia Summers

Strickland has sued Summers both individually and in her official capacity as a Dothan police officer. To the

13

extent Strickland has sued Summers in her official capacity, he has essentially sued the City of Dothan. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (official-capacity lawsuits are, "in all respects other than name, ... treated as a suit against the entity"). While a plaintiff may sue a defendant in her official capacity, "doing so is usually necessary only when a suit against the governmental entity itself is barred by the eleventh amendment to the United States Constitution." Shows v. Morgan, 40 F.Supp.2d 1345, 1362 (M.D. Ala. 1999) (Thompson, J.)   Here, because no Eleventh Amendment immunity issues have been presented, there is no need to maintain suit against Summers in her official capacity. Summary judgment will be granted on all claims against Summers in her official capacity.

To the extent she has been sued in her individual capacity, Summers has raised the affirmative defense of 'qualified immunity.'   This doctrine insulates government agents from personal liability for money

damages for actions taken in good faith pursuant to their discretionary authority. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982). To be entitled to qualified immunity, a defendant must establish "that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." <u>Sims v. Metropolitan Dade County</u>, 972 F.2d 1230, 1236 (11th Cir. 1992).[23] Once this is proven, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. <u>Wood v. Kesler</u>, 323 F.3d 872, 877 (11th Cir. 2003).

"The threshold inquiry [at the second stage of the qualified-immunity analysis] is whether plaintiff's assertions, if true, establish a constitutional violation." <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002).

---

23. The term 'discretionary authority' includes all acts of a governmental official that are (1) undertaken pursuant to the performance of official duties and (2) within the scope of the official's authority. <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994). Strickland does not dispute that Summers was on duty, in uniform, driving a marked patrol vehicle, and working her regular shift as a patrol officer of the City of Dothan when she stopped his car and arrested him. Therefore, her acts were within the scope of her discretionary authority.

If the court determines that the plaintiff has not alleged a deprivation of a constitutional right, then the inquiry ends. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998). However, if the court determines that the plaintiff has, in fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to "whether that right allegedly implicated was clearly established at the time of the events in question." <u>Id</u>. Even if a constitutional violation occurred, public employees are shielded from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457 U.S. at 818.

### 1. Arrest

#### a. Probable Cause

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226

(11th Cir. 2004).   However, an action for impermissible arrest is barred if probable cause existed at the time of arrest.  <u>Wood</u>, 323 F.3d at 878.   An arrest is supported by probable cause when it is objectively reasonable based on the totality of the circumstances.   <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir. 1998). "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" <u>Id</u>. (quoting <u>Williamson v. Mills</u>, 65 F.3d 155, 158 (11th Cir. 1995)).[24]

_____

24. Paragraph nine of Strickland's complaint (Doc. No. 1) also alleges that there was no probable cause for the initial traffic stop.  This claim is not raised in subsequent filings. Strickland admits to driving without headlights at the time of the stop. "[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." <u>United States v. Cooper</u>, 133 F.3d 1394, 1398 (11th Cir. 1998) (internal citations omitted).  Driving without headlights is a violation of 1975 Alabama Code § 32-5-240.  Because

In her report filed pursuant to Strickland's arrest, Summers describes the totality of the circumstances supporting her decision to arrest Strickland as including: (1) Strickland's driving without headlights; (2) his improper changing of lanes prior to making a left turn;[25] (3) the presence of several bottles of beer and an open container of beer in Strickland's car;[26] (4) a smell of alcohol in the car; and (5) Strickland's failure to pass the following field sobriety tests: (a) 'one-leg stand'; (b) 'walk-and-turn'; and (c) HGN.  The report also states that Strickland did not correctly complete the 'ABC' and 'finger-count' tests administered by

---

Strickland was admittedly violating a state code provision governing the operation of motor vehicles, probable cause existed for the initial stop.

25. Summers does not suggest that Strickland executed any improper changing of lanes in her motion for summary judgment (Doc. No. 14), and Strickland was not issued a citation nor charged with this alleged offense.

26. The bottles of beer retrieved from Strickland's car were either empty or not open.  Although Strickland disputes that any container of alcohol was open in his car, the record reflects that a passenger had a cup that may have contained beer.  Strickland deposition, p. 21.

Officer Rice, although this appears to be a misrepresentation, since Strickland did pass the 'finger-count' test, and passed the alphabet test when given a chance to recite slowly.

Strickland neglected to turn on his headlights and possibly changed lanes incorrectly. These are minor traffic infractions, but clearly gave Summers probable cause to conduct a traffic stop. Those infractions, combined with the odor of alcohol in the car and the presence of bottles of beer (though closed or empty), are indicia of driving under the influence. Strickland's admission that he drank an alcoholic beverage over four hours earlier does not indicate that he was impaired at the time of the stop, but all of the factors combined could cause a reasonable officer to decide to administer field-sobriety tests.

In the absence of those tests, however, the indicia do not offer enough information for a reasonable officer to conclude that Strickland was driving under the

influence.  Longstanding public policy encourages groups of friends who plan to drink alcohol to designate a driver who will refrain from drinking in order to safely transport the others.  This is precisely what Strickland claimed to be doing on the night of his arrest.  The policy will logically result in unimpaired drivers transporting intoxicated passengers in vehicles that may smell of alcohol.  Summers had reason to suspect impairment when these factors were combined with minor traffic infractions, but such suspicions must be verified through tests of the driver's motor skills, as Summers herself apparently understood.

The court in Hurst v. Finley, 857 F.Supp. 1517 (1994) (M.D. Ala.) (Dement, J.), reached precisely the same conclusion in the case of a plaintiff who was stopped by a police officer after running a stop sign.  The plaintiff was driving a car with three intoxicated passengers, and the vehicle smelled of alcohol, allegedly because a beer had spilled inside the car.  When asked

20

whether she had been drinking, the driver confirmed that she had been, but stated that she was not "drunk."  The officer arrested the driver for DUI without administering field-sobriety tests.  <u>Hurst</u>, 857 F.Supp. at 1519.  The court found the arrest was not supported by probable cause: "In charging an accused with the serious offense of driving under the influence of alcohol, the court believes that it would be entirely convenient and proper to administer one or more field sobriety tests."  <u>Id</u>. at 1521.

The difference, of course, is that Summers did administer field-sobriety tests to Strickland.  The results of those tests determine the finding of probable cause.  At the scene, Summers determined that Strickland failed to pass the 'one-leg stand,' 'walk-and-turn,' and the first HGN field-sobriety tests.  It is undisputed that Strickland lost his balance and put his foot down more than once during the 'one-leg stand' test.  Summers contends that when Strickland began the 'walk-and-turn'

test, he failed to start counting with his steps, as instructed.  Summers also determined that he did not pass the test because he did not touch the toe of his rear foot to the heel of his forward foot while walking, and because he did not 'pivot' correctly during the turn. Finally, Summers determined that, during the HGN test, Strickland exhibited a lack of 'smooth pursuit,' meaning that he did not follow a light stimulus with his eyes without involuntary jerking in the eyes, and that he exhibited 'distinct nystagmus at maximum deviation,' meaning that his eye clearly jerked when it followed the light stimulus as far to the side as possible.[27]  These results, if accurate, could indicate impairment caused by alcohol.[28]

However, Strickland has introduced compelling and undisputed evidence that Summers failed to administer these tests correctly.  Through the report of an expert

_____

27. Summers deposition, p. 31.

28. Expert Report, p. 21.

witness, Strickland contends the following facts, which the court is compelled to view in the light most favorable to him:

HGN test:[29]  NHTSA standards for this test require a minimum administration time of 32 seconds for accurate results.[30]  NHTSA standards warn that use of a flashlight, rather than a penlight, can result in unreliable results because flashlights can cast shadows and cause artificial blinding.  "The officer is trained to have the suspect look into a quiet background, away from the police cruiser overhead lights and traffic passing in close proximity."[31]   Summers administered this test to

_____

29. Strickland correctly asserts that the result of a HGN test is inadmissible in Alabama courts to prove intoxication.  Sides v. State, 574 So. 2d 859, 859 (Ala. 1991).  "Alabama courts, however, do allow the results of a horizontal gaze nystagmus test to support an officer's determination of probable cause."  Babers v. Tallassee, 152 F.Supp.2d 1298, 1306 (2001) (Albritton, J.). Therefore, this court will consider the effect of the HGN test in determining whether the officer had probable cause for a DUI arrest.

30. Expert Report, p. 3.

31. Id., p. 22.

Strickland over the course of 19 seconds using a six-cell
high-intensity flashlight as Strickland looked towards
the high-intensity strobe lights of the police vehicle.
As part of this test, it appears that Summers also
briefly administered a VGN test, which could indicate the
presence of drugs.  NHTSA standards require a minimum
administration of 12 seconds for this test, while Summers
tested only for 3.5 seconds.[32]

One-leg stand test: During the administration of this
test, Summers did not instruct Strickland to hold his
arms at his sides or to watch his raised foot at all
times.  Both instructions, and verbal acknowledgment of
understanding on the part of person suspected of
intoxication, are required by NHTSA standards.  Summers
also instructed Strickland to hold his raised foot over
the toes of his stationary foot, creating a center of
balance such that an average unintoxicated person would
be unable to maintain her balance.  She instructed

---

32. Id., p. 3.

Strickland to point his toes up, rather than out, as required by the standards.  Finally, Summers and Rice moved about during the administration of this test. NHTSA standards advise officers to remain as motionless as possible in order to avoid interfering with the test.[33]

Walk-and-turn test: NHTSA standards require an officer to give verbal instructions and a complete demonstration of this test, which involves walking heel-to-toe for nine steps, turning on a pivot, and walking back using a visible straight line.  The standards warn that "[i]f the officer does not follow training and procedure during [the instruction] stage, it may affect the validity of the entire test."[34]  Summers failed to give complete verbal instructions, and failed to make a proper turn during her demonstration.  Additionally, she had Strickland walk along an imaginary line, rather than

---

33.  Id., p. 29.

34.  Id., p. 26.

a visible one, and she moved about during the test administration in violation of the standards.[35]

After these tests were administered, Summers asked Rice to perform additional tests on Strickland. As noted above, in Rice's opinion, Strickland passed the 'finger-to-nose' test, the 'finger-touch' test, and the 'ABC' test (on the second try, after skipping a letter during his first recitation). Finally, Rice saw 'a little bit' of nystagmus, or eye jerking, during his administration of a second HGN test to Strickland, and no nystagmus in a VGN test.

This record raises serious questions about the competency of Summers's administration of the field-sobriety tests. Plaintiff's expert states that "the tests were administered in such a way as to prevent a reasonable person [who was not intoxicated] from passing."[36]   Strickland argues that no reasonably

_____

35. Id.

36. Id., p. 9.

competent officer would have administered the tests in the way Summers did, and consequently no reasonably competent officer could have relied on the results of those tests in finding probable cause for an arrest.

Surprisingly, Summers does not respond to this allegation or produce evidence suggesting that the tests were, in fact, administered competently. Based on the evidence in the record, the court must find that they were not administered competently. It is imperative that police officers--who are expected to interact with, and potentially arrest, individuals who may be intoxicated-- have correct knowledge of how to demonstrate and interpret the field- sobriety tests on which the liberty of those individuals may depend. It is not objectively reasonable to rely on a performance in a field- sobriety test for a finding of probable cause for a DUI arrest when the test has been administered incompetently.[37]

_____

37. In her motion for summary judgment (Doc. No. 14), p. 11, Summers does note that "[b]oth officers at the scene felt there was sufficient probable cause to arrest the Plaintiff for DUI." Summers appears to be suggesting

27

that her judgment could not be unreasonable if another
officer reached the same conclusions about Strickland's
sobriety, and that Officer Rice's presence at the scene
provides another ground for a finding of probable cause
in the totality of the circumstances.   However, the
record does not support this conclusion.   Rice did not
see the administration of the first HGN test.  Rice
deposition, p. 26.   While Rice felt that Strickland did
not adequately perform the second two sobriety tests
administered by Summers, Summers's incorrect instructions
could have precipitated this result.   For example, Rice
asserts that Strickland did not pivot correctly in the
'walk and turn' test, Rice deposition, p. 29, but
Strickland has presented evidence that Summers
incorrectly demonstrated the pivot in that test. Finally,
Rice asserts that the decision to arrest Strickland was
Summers's alone.   Rice deposition, pp. 36-37, ln. 14.

> "Q: Okay.  Now, what did you do after
>     you administered the field sobriety
>     tests.
>
> "A: I believe I spoke with Officer
>     Summers again.
>
> "Q: And what did ya'll discuss?
>
> "A: She was talking about, at that
>     point, maybe an option of calling a
>     cab or calling somebody to come
>     pick him up, at that point.
>
> "Q: And did she do that?
>
> "A: Either that or make an arrest on him.
>
> "Q: And what did you tell her about

28

The incompetency of the administration of the field-sobriety tests distinguishes this case from <u>Babers v. Tallassee</u>, 152 F.Supp.2d 1298 (2001) (Albritton, J.), where the court found probable cause for an arrest based on circumstances similar to the ones here: the plaintiff's erratic driving, an odor of alcohol, an intoxicated passenger, plaintiff's admission that she had "a couple" of wine coolers, and her performance in the same field-sobriety tests that were administered to Strickland ('one-leg stand,' 'walk-and-turn' and HGN tests). Like Summers, the arresting officer in <u>Babers</u> contended that the plaintiff failed the tests because she touched the ground several times during the 'one-leg stand,' because she lost her balance and failed to touch heel to toe during the 'walk and turn,' and because the

---

that?

"A: It's her call."

officer observed 'some but very little' eye jerking during the HGN.

The plaintiff in Babers contended that the HGN test could not be relied upon because the arresting officer failed to ask whether she wore contact lenses during the pre-test screening, a condition that the NHSTA manual in existence at the time of the arrest stated could have "a very slight chance" of interfering with the HGN test. The manual in existence at the time of the court's decision stated that "contact lenses ... do not affect the [HGN] test in any way."  Babers, 152 F.Supp.2d at 1306 and n. 5.  The plaintiff did not contend that the other two field tests were administered incorrectly.  By contrast, as discussed above, Strickland asserts that Summers misadministered all the tests in ways that NHSTA standards acknowledge could completely undermine their reliability.

The court finds that, absent Strickland's performance in the field-sobriety tests, no probable

cause would have existed for an arrest.   Because the court finds that the sobriety tests were administered incompetently, Strickland's arrest was unsupported by probable cause in violation of the Fourth Amendment.

### b. Arguable Probable Cause

Once a plaintiff has successfully alleged a deprivation of a constitutional right against a public official, he must still overcome the barrier of qualified immunity in order for his claim to survive.   In order to do so, he must show that the implicated right was "clearly established at the time of the events in question." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998).   In determining whether a right was clearly established, courts can examine whether case law existing at the time of the violation would put a reasonable officer on notice that the officer's conduct violates constitutional rights.   Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002).   In the context of an

31

arrest, the Eleventh Circuit Court of Appeals frames this inquiry as whether an officer had "arguable probable cause." <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11th Cir. 1997).

It is well settled that "even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." <u>Wood</u>, 323 F.3d at 878 (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)). Because only arguable probable cause is needed, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." <u>Montoute</u>, 114 F.3d at 184. The stripping of qualified immunity is an "exceptional" remedy that does not require government agents always to err on the side of caution, <u>Lassiter v. Alabama A&M University</u>, 28 F.3d 1146, 1149 (11th Cir. 1994), <u>abrogated on other grounds by</u> <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002); but the doctrine will not

protect a "plainly incompetent officer or one who was knowingly violating the law." Lassiter, 28 F.3d at 1149; Malley v. Briggs, 475 U.S. 335, 341-43 (1986).

Although the court finds that Summers's administration of the field sobriety-tests was incompetent, her decision that probable cause existed for a DUI arrest, while mistaken, was not unreasonable in light of the information she possessed at that time. Strickland was driving without headlights in darkness, he made a minor error in the alphabet test (which he agrees was correctly administered) and both Summers and Rice detected some (if slight) nystalgia or eye-jerking. These indicia of intoxication suggest that Summers had arguable probable cause for the arrest, given the totality of the circumstances. For that reason, Summers is entitled to qualified immunity on Strickland's claim arising out of the arrest.

## 2. Detention

Strickland also asserts that Summers violated his constitutional rights by detaining him after administering a Draeger Intoxilizer Test that reported a blood alcohol level of 0.00 %.  "[F]ollowing a lawful warrantless arrest, a police officer has an affirmative duty to release an arrestee if he ascertains beyond a reasonable doubt that the probable cause which formed the basis of the arrest was unfounded."  Babers, 152 F.Supp.2d at 1309. This standard, adopted by the district court in Babers, was articulated in Thompson v. Olson, 798 F.2d 552 (1st Cir. 1986) (announcing the standard in the context of a state-law claim of false imprisonment), cert. denied, 480 U.S. 908 (1987), and followed by the Fifth Circuit in McConney v. City of Houston, 863 F.2d 1180 (5th Cir. 1989) (applying the standard to constitutional claims arising out of a warrantless arrest) and Duckett v. Cedar Park, 950 F.2d 272, 278 (5th Cir. 1992) (applying the standard to arrests made pursuant to a warrant if officers fail to

34

release an arrestee after receiving information upon which to conclude beyond a reasonable doubt that the warrant had been withdrawn).

In Babers, the court found that an officer had probable cause to effectuate an arrest for driving under the influence of alcohol, but that the probable cause dissipated when a test revealed that the plaintiff had a blood alcohol level of 0.00 %. Applying the Thompson standard, the court found that the officer lacked probable cause to continue to detain and charge the plaintiff with driving under the influence. Babers, 152 F.Supp.2d at 1309. The court further found that the officer lacked probable cause to charge and detain the plaintiff with the "closely related offense" of driving under the influence of a controlled substance. Id. at 1311; see also United States v. Atkinson, 450 F.2d 835, 838 (5th Cir. 1971) ("When a crime under which the arrest is made and a crime for which probable cause exists are in some fashion

35

related, then there is no question but that there is a valid arrest.")[38]

However, the court found that the officer was protected by qualified immunity because "arguable probable cause" existed to arrest the plaintiff for driving under the influence of a controlled substance; a reasonable officer, observing deficient performance on field sobriety tests, but knowing that the driver was not under the influence of alcohol, could have believed probable cause existed for an arrest.  The court noted that the plaintiff did not show that "pre-existing law dictated the conclusion for every like-situated reasonable government official" that the officer's actions were in violation of federal law.  Babers, 152 F.Supp.2d at 1311-1312.

Summers, unlike the officer in Babers, is not protected by the total absence of pre-existing law.  She

_____

38. In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

36

makes no argument that Strickland's continued detention
was not a constitutional violation; she does not argue
that any arguable probable cause for arresting and
detaining Strickland persisted after she received the
results of the blood alcohol test; nor does she argue that
the test was invalid, or that a reported blood alcohol
level of 0.00 % should not lead to the automatic
conclusion that Strickland was not under the influence of
alcohol.  Strickland's continued detention was apparently
the direct result of Summers's decision to check the "IH4"
box on the DUI arrest report, indicating that she believed
Strickland to be intoxicated on alcohol or some other
substance that would impair his ability to drive or walk
safely down the street, and which mandated a detention of
at least four hours.

In the filings before the court, the only explanation
--direct or indirect--offered for Summers's decision to
mark the IH4 box is her statement in deposition that
"[b]ased on the totality of the circumstances, I felt he

was under the influence of something. ... I wrote the ticket for any substance that impairs, based on the alcohol--open containers in the car, the alcohol in the cup, and also on what I smelled, the tests, and on the vertical nystagmus."[39]  This is the only place in her filings that Summers mentions the VGN test that she partially administered. Other than asserting that this test, which she administered for 3.5 seconds, formed part of her decision, she advances no evidence or argument as to what circumstances might have lead to a conclusion that Strickland was under the influence of some substance other than alcohol.

    Both Summers and Rice concede that the purpose of their testing was to determine alcohol intoxication.[40]  The VGN was the only test performed that would have detected impairment caused by drugs.  Summers's administration of the test was insufficient, as noted above, and more

------

    39. Summers deposition, p. 39.

    40. Summers deposition, p. 40; Rice deposition, p. 30.

importantly, she never asserts that she felt Strickland failed this portion of the test.   The VGN test administered by Rice provided direct evidence that Strickland was not impaired by a non-alcohol substance. When asked in deposition why, if she suspected impairment, and after the results of the blood alcohol test revealed no alcohol in Strickland's system, she did not administer other tests for controlled substances, Summers responded: "I just didn't."

The court finds that no evidence exists to establish that Summers had actual probable cause to arrest or detain Strickland for driving under the influence of any non-alcohol substance.   The court also finds that no arguable probable cause existed because the one administered test that could have indicated that Strickland was impaired by a substance other than alcohol provided direct evidence that he was not so impaired.   No officer "reasonably could have believed that probable cause existed, in light of the

information the officer possessed." <u>Montoute</u>, 114 F.3d at 184.

In sum, Summers had no evidence, and offers none, to support her decision to check the IH4 box on the arrest report. To the extent that Strickland's detention was mandated by that choice, it was unsupported by arguable probable cause. As in <u>Babers</u>, Summers had actual knowledge of Strickland's innocence of the DUI charge after receiving the results of the blood alcohol test, and an affirmative duty to release him. Strickland's continued detention was a violation of his Fourth Amendment right, and Summers is not protected by qualified immunity. Summary judgment is denied with respect to Strickland's claim against Summers arising out of his detention.

40

### B. Claims against the City of Dothan

A municipality "may not be held liable for constitutional deprivations on the theory of respondeat superior." Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, liability may attach to the municipality only if the constitutional violation resulted from a "policy or custom." Id. In certain situations, the failure to train officers may constitute a 'policy' upon which governmental liability may rest. City of Canton v. Harris, 489 U.S. 378 (1989). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. A finding of 'deliberate indifference' requires evidence that the municipality was 'on notice'; in other words, a plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate

41

choice not to take any action." <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998).

Strickland argues that the constitutional violations arising from his arrest and detention resulted from policies or customs of the City of Dothan, and that the violations were attributable to the city's failure to train or supervise Officer Summers.

### 1. Arrest

Strickland presents no evidence that the City of Dothan has a policy of effecting DUI arrests without probable cause.  He does argue that Summers "received absolutely no training in making a proper DUI arrest."[41] Strickland offers no specific evidence to support this contention.  The City of Dothan asserts that Summers received DUI investigation and arrest training as part of the Dothan Police Department Basic Course (160 hours) and in her police academy training (480 hours), as well as

_____

41. Plaintiff's response to defendants' motion for summary judgment (Doc. No. 19), p. 18.

during her five weeks of field training with the Dothan
Police Department.[42]

Strickland suggests that incidents in Summers's
personnel records should have put the City of Dothan on
notice that further training was needed.  The personnel
records reflect that one complaint--involving a parking
citation--was lodged against Summers with the police
department's Internal Affairs Division.[43]  The records also
reflect that Summers issued a warrant in a personal matter
in October 2002 and attempted to effect an arrest without
probable cause.[44]  Neither of these incidents involved a
DUI arrest.  Consequently, the City of Dothan was not on
notice that Summers was in need of further training or
supervision in conducting DUI arrests.  Summary judgment

---

42. Defendants' motion for summary judgment (Doc. No.
14), Exhibit B, Affidavit of Sylvia Summers, pp. 1-2.

43. Plaintiff's response to defendants' motion for
summary judgment (Doc. No. 19), Exhibit R, Summers's
personnel file.

44. Id.

is granted on Strickland's claims against the City of Dothan arising out of his arrest.

## 2. Detention

The court must now determine whether the constitutional violation arising from Strickland's continued detention resulted from a policy or custom of the City of Dothan or from the city's failure to train or supervise Summers.  The City of Dothan is silent on this question in its filings before the court, and there is contradictory evidence regarding the city's actual detention policy following an arrest for DUI when the probable cause for that arrest disappears.  The jailer for the city at the time of Strickland's arrest believed the length of detention was scaled to the results of the blood-alcohol test.[45]  The Chief of Police during the same period believed that a person arrested for DUI would be

---

45. Id., Exhibit I, Deposition of Stacey Simmons, pp. 6-7.

detained for four hours no matter the result of the blood-
alcohol test.[46]

The court does not have to resolve these contradictory
assertions because in this case it is undisputed that
Strickland's continued detention after the blood alcohol
test was the direct result of Summers's decision to mark
the IH4 box on the arrest report.  The city's mandatory
policy of detaining individuals for four hours when an
officer marks the IH4 box does not reflect deliberate
indifference to the rights of those individuals.  Rather,
it reflects the reasonable idea that a person should not
be permitted to walk or drive home from the jail when an
officer believes that person to be impaired.  The policy
does depend upon the ability of officers to make a
determination of impairment based upon probable cause.
The fact that Summers's decision to mark the box was not,
in this case, based upon probable cause, does not render
the policy invalid.  Strickland has not presented evidence

---

46. Id., Exhibit H, Deposition of John C. White, p.
20.

45

suggesting that Summers's decision was the result of a lack of training or supervision.  Therefore, summary judgment is granted on Strickland's claims against the City of Dothan arising out of his detention.

### IV. STATE-LAW CLAIMS

### A. False Arrest

Summers asserts that Strickland's claim of false arrest under Alabama state law is due to be dismissed because the arrest was supported by probable cause and because she is entitled to discretionary-function immunity pursuant to 1975 Alabama Code § 6-5-338(a).[47]  Probable

_____

47. 1975 Code of Alabama § 6-5-338(a) reads:

"Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties

46

cause is analyzed under the federal standard: "Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime." Dixon v. State, 588 So. 2d 903, 906 (Ala. 1991) (citing United States v. Rollins, 699 F.2d 530 (11th Cir.), cert. denied, 464 U.S. 933, (1983)); see also Walker, 140 F.Supp.2d at 1262 (finding no probable cause existed for purposes of state-law false-imprisonment or

_____

prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."

47

arrest claims since court had already found sufficient evidence to suggest that no probable cause existed for an arrest for purposes of the Fourth Amendment).  Because the court has already found that Strickland's arrest was not supported by probable cause, his state-law claim for false arrest is not defeated on that ground.

1975 Alabama Code § 6-5-338(a) grants statutory immunity from tort liability to municipal police officers for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  However, the immunity does not protect conduct that is "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith."  <u>Couch v. City of Sheffield</u>, 708 So. 2d 144, 153 (Ala. 1998).  To apply discretionary-function immunity, the court must first determine whether the police officer was performing a discretionary function when the alleged wrong occurred.  If so, "the burden shifts to the plaintiff to demonstrate that the defendant acted in bad faith, with malice or

willfulness in order to deny [him] immunity." Scarbrough
v. Myles, 245 F.3d 1299, 1303 n.9 (11th Cir. 2001)
(alteration in original) (applying Alabama law and quoting
Sheth v. Webster, 145 F.3d 1231, 1239 (11th Cir. 1998)
(per curiam)).  Under both federal qualified-immunity and
state discretionary-function-immunity analyses, "the core
issue is whether a defendant violated clearly established
law." Sheth, 145 F.3d at 1239.

    In this case, Summers was acting within her
discretionary function when she arrested Strickland.
Walker, 140 F.Supp.2d at 1263 ("Actions by an officer in
executing an arrest are generally considered discretionary
functions for purposes of § 6-5-338."); see also Sheth,
145 F.3d at 1238-39; Ex parte City of Montgomery, 758 So.
2d 565, 569-71 (Ala. 1999);. Strickland has presented
evidence that his arrest was the result of incompetence;
not malice, willfulness, or bad faith.  Summers is
immunized from suit under the discretionary-function-
immunity doctrine for the same reasons that gave rise to

49

arguable probable cause sufficient to immunize her under the qualified-immunity doctrine.  Summary judgment is appropriate on Strickland's state-law false arrest claim.


## B. False Imprisonment

Strickland has presented evidence that he was detained long after Summers had actual knowledge that he was not intoxicated, and he contends that the continuing detention constituted false imprisonment.  "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."  1975 Alabama Code § 6-5-170. Summers offers no evidence or argument that Strickland's continuing detention should not be attributed to her actions (which include marking the IH4 box on the arrest report) or why those actions should be protected by discretionary-function immunity.  In fact, defendants' brief in support of their motion for summary judgment contains no discussion of the continuing detention when

addressing Strickland's state-law claims.  The brief
simply refers to the original arrest, stating: "Officer
Summers was exercising her discretionary judgment when she
arrested Plaintiff for DUI based on the facts she had
before her at the time of the arrest, and she is entitled
to discretionary function immunity."[48]

In <u>Burdeshaw v. Snell</u>, 350 F.Supp.2d 944, 953 (M.D.
Ala. 2004) (McPherson, M.J.), the court denied a motion to
dismiss state claims of false arrest and malicious
prosecution, finding that the arresting officer "may have
forfeited his entitlement to discretionary function
immunity" because he had been presented at the scene of
the arrest with exonerating information which he failed to
investigate.  Here, Summers was not required to
investigate exonerating information: it was presented to
her in the form of a test result indicating that
Strickland had no alcohol in his system.  Because Summers
does not respond to Strickland's allegations of false

_____

48. Defendants' motion for summary judgment (Doc. No.
14), p. 31.

imprisonment in the complaint, she has not met her burden of informing the court of the basis for her summary judgment motion.

Because Strickland is entitled to prove the malice, willfulness, or bad faith he alleges exempts Summers from the protection of discretionary function immunity, summary judgment will be denied on the false-imprisonment claim.

## C. Malicious Prosecution

In order to survive summary judgment on his malicious prosecution claim, Strickland must present "substantial evidence of the following elements: (1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding." Delchamps, Inc. v. Bryant, 738 So. 2d 824, 831-832 (Ala. 1999).

Factors one, three and four are not in dispute in this case.  By showing that Summers had affirmative proof that he was not under the influence of alcohol after the blood-alcohol test, Strickland has presented substantial evidence that he was prosecuted without probable cause.

The remaining factor is malice.  Personal ill will is not required for a finding of malice.  <u>Delchamps, Inc. v. Larry</u>, 613 So. 2d 1235, 1239 (Ala. 1992).  Malice may be inferred from a lack of probable cause, or from carelessness, if carelessness is coupled with knowledge that the conduct at issue is "wrong and unlawful." <u>Bryant</u>, 738 So. 2d at 833 (holding that the plaintiff presented sufficient evidence of lack of probable cause, coupled with a lack of good faith, from which malice could be inferred). Such an inference of malice can be rebutted by a showing of good faith.  <u>Id</u>. at 832; <u>Walker</u>, 140 F.Supp.2d at 1264.

Again, Summers relies entirely on the idea that probable cause for the original arrest (which this court

has found did not exist) precludes the finding of malice necessary to sustain a claim of malicious prosecution under Alabama state law.  Even if the arrest had been supported by probable cause, Summers offers no reason why the charge should not have been dropped once Strickland's blood-alcohol test showed he had no alcohol in his system. Strickland has produced evidence, including Summers's affirmative knowledge of his innocence, that could suggest the lack of probable cause--or carelessness coupled with knowledge of wrongdoing--from which a jury could infer the element of malice.  Summers fails to argue that any of her decisions, other than the original arrest, were made in good faith.  As a result, summary judgement will be denied on Strickland's claim for malicious prosecution.


## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

**54**

(1) Defendants City of Dothan and Sylvia Summers's motion for summary judgment (Doc. No. 13) is granted in favor of defendants on the following claims:

    (A) All claims arising out of the Fifth and Fourteenth Amendments;

    (B) All claims against defendant Sylvia Summers in her official capacity;

    (C) The claim arising out of the Fourth Amendment (arrest) against defendant Summers in her individual capacity;

    (D) The claims arising out of the Fourth Amendment (both arrest and detention) against defendant City of Dothan; and

    (E) The state-law claim of false arrest against defendant Summers.

(2) Said motion for summary judgment is denied on the following claims:

(A) The claim arising out of the Fourth Amendment (detention) against defendant Summers in her individual capacity; and

(B) The state-law claims of false imprisonment and malicious prosecution against defendant Summers.

DONE, this the 8th day of November, 2005.


　　　　　　　　　　　 /s/ Myron H. Thompson
　　　　　　　　　　UNITED STATES DISTRICT JUDGE